INTERNATIONAL REGISTER CO. v. RECORDING FARE REGISTER CO. et al.

(Circuit Court of Appeals, Second Circuit. January 7, 1907.)

No. 74.

1. GOOD WILL—SALE—WRONGFUL DIVERSION OF CONTRACT BY EMPLOYÉ OF SELLER.

Defendants *held* accountable to complainant for the profits made on a contract diverted by them from complainant's predecessor in business, to whose contracts and good will complainant succeeded, and which was obtained for defendants by one of them while in the employ of complainant's said predecessor as its agent by the use of information which was given him, as such agent, while acting for his employer in negotiating for the contract.

2. INJUNCTION—GROUNDS.

It is not sufficient ground for an injunction that it will not interfere with the conducting of defendants' business in a lawful manner, since the granting of any kind of an injunction stigmatizes the defendants as having done or threatened to do some illegal or inequitable act of a nature to justify such extraordinary relief.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, § 22.]

3. SAME—ANTICIPATED INJURY.

An injunction perpetually restraining defendants from making use of any sketches or patterns belonging to complainant or to a corporation to whose business it succeeded, and from representing themselves as in any way succeeding to such business, is not justified where there is no evidence that they had in their possession at the date of the suit any such sketches or patterns, or that they ever made such representations, or sought to induce such belief.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, §§ 10–12.]

4. SAME—SCOPE—USE OF INFORMATION OBTAINED AS EMPLOYÉ.

An injunction perpetually restraining defendants from using any and all information in reference to the business of a corporation obtained while in its employ, and which information could only have been obtained by the confidential relationship existing by such employment, is too broad.

Appeal from the Circuit Court of the United States for the District of Connecticut.

For opinion below, see 139 Fed. 785.

This cause comes here on appeal from an interlocutory decree of the United States Circuit Court for the District of Connecticut, ordering an accounting for damages to complainant and defendants' profits on a contract made by them with the Boston Suburban Electric Companies, and enjoining defendants "from directly or indirectly using or attempting to use any of the patterns, drawings, sketches, or other property of the New Haven Car Register Company or the International Register Company, the complainant, or making or causing to be made any representations to customers, agents, or any person or per-

sons whomsoever that they are able to fill orders; making use of said patterns, drawings, sketches, or other property of said the International Register Company, the complainant; from filling or attempting to fill any of the orders or contracts of said the New Haven Car Register Company or said the International Register Company, the complainant; from selling, or causing, procuring, or offering to be sold, any of the drawings, patterns, sketches, or other property of said the International Register Company, the complainant; from using the name of the New Haven Car Register Company in advertisements or announcements, or advertising that the individual officers, or employees or any of them, of the defendant the Recording Fare Register Company, Incorporated, were formerly in the employ of the New Haven Car Register Company, in such manner as to in any way deceive customers into the belief that they are dealing with the successors to the New Haven Car Register Company; from using any and all information in reference to the business of the New Haven Car Register Company obtained while in its employ, and which information could only have been obtained by the confidential relationship existing by such employment; and from doing any other act or acts, either individually or in concert; which shall be in any manner a misrepresentation or misappropriation of the good will and property of the said the New Haven Car Register Company or of the International Register Company, the complainant."

L. W. Daggett, John Q. Tilson, and White, Daggett & Tilson, for appellants.

W. A. Bither, for appellee.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

TOWNSEND, Circuit Judge. The facts stated by the court in its opinion as to the Boston Suburban Electric Companies' contract, and abundantly supported by the record, sustain the propriety of the order for an accounting thereon.

Upon this branch of the case the court below found as follows:

"In these circumstances it appears that the New Haven Car Register Company came very close, indeed, to getting an order, but I do not think that they did exactly get it. The delays incident to the shifting of the business and Mr. Hayes' personality entered into the equation, and just prevented an absolute, complete, unequivocal order. There are, however, sufficient reasons why the defendants had no right to obtain and execute the Boston order. First, Mr. Hayes had been paid by the New Haven Car Register Company for his services in advancing the business to the stage it had reached, and it was only by making use of private information which had reached that company through Mr. Hayes' efforts that he was enabled to direct the business to the uses of himself and companions. And, again, during all the time which he spent in gathering the Boston connection around his new company, he was, by his own admission, under contract to the New Haven Company."

We concur in this conclusion.

The private information, by means of which the defendant Hayes negotiated said business, was obtained while he was in the employ of the New Haven Company, and he actually secured for defendants the order and contract complained of in March, and while he was still under salary as agent of said New Haven Company. The claim that he was not still in its employ is asserted on the ground that payment of his salary to April 1st was a compromise. But this does not affect the admitted fact that he was paid for his time up to April 1st, under a claim on his part, apparently well founded, that he was under a contract of service which did not expire until June 1st. The fact that in March complainant's president, after taking possession of the property, re-

fused to have further dealings with him, did not affect his relation. under his contract with the New Haven Company.

Said contract was not broken by the selling out of the property and business of the New Haven Company to complainant, thus leaving Hayes with nothing to do. Although doing nothing, he would, nevertheless, be entitled to his salary. This he claimed, and he finally compromised with the New Haven Company for $50 for the 2½ months.

Inasmuch as he was the agent of the New Haven Company under said contract, he was under a legal obligation not to act adversely to its interests in connection with any of its business, and especially any business with which he had become connected by means of information and relations growing out of said agency. Therefore, when he dealt with the Boston Company, he was still an employé of the New Haven Company, and his acts inured to their benefit and to that of their vendee. Therefore the contract he made and filled for himself and associates was one to which the New Haven Company was entitled, and the decree for an accounting of damages or profits is affirmed.

The decree granting a perpetual injunction, however, presents different questions. Upon the filing of the bill and affidavits, from which it appeared that such action was essential for the protection of complainant's rights, the court granted a preliminary injunction, which was made permanent by the order now complained of. It appeared upon the hearing that some of the defendants, who were employés of the New Haven Company, on hearing that it had sold out to complainant exhibited a pernicious and inequitable activity in attempting to secure the business of their former employer. But it is claimed that, as there was no evidence that at the date of the filing of complainant's bill, "there was any property rightfully belonging to the complainant in the possession or control of the defendants, or any of them, and that, as it appeared affirmatively by the uncontradicted testimony of the defendants that no such property was in their possession or control, the prayer of complainant's bill for an injunction restraining the defendants from the use of such property should have been denied." An examination of the record sustains this claim. The only patterns, drawings, sketches, and other property which complainant showed had been in the possession of defendants were the so-called "Tri-City sketch" and the "Boston & Maine pattern." But "it now appears by Woodward's testimony that at the time the bill was filed and the affidavits made, on which the preliminary injunction was granted, the Tri-City sketch was, in fact, in possession of the complainant." As to the Boston & Maine pattern, it is not shown that it came wrongfully into the possession of defendants, even if it be assumed that they originally attempted to make an inequitable use of it. It is clear that at the very time when the Woodward affidavit, on which the preliminary injunction was granted, was filed, the Boston & Maine order was being filled by complainant, and that there was no danger whatever that complainant would suffer injury from the use by defendants of that pattern or defendants' possible attempt to obtain such order. There is no evidence that the defendants ever used their names or the name of the defendant company in such manner as to deceive the customers into

the belief that they were dealing with the successors to the New Haven Company.

It is not sufficient ground for an injunction that obedience to it will not hurt defendants. Nor is it any answer to the assignments of error by defendants that "there is nothing in the injunction that would interfere with an honest man conducting his business unhindered by any restriction." The mere fact of the issuance of any sort of an injunction stigmatizes the defendants as having done or threatened to do some illegal or inequitable act of such a nature as to justify such extraordinary relief, and, if cleverly advertised, may hurt the defendants in their business world.

. It does not appear that at the date of the bill any of complainant's property was in possession of defendants, or that they were representing that they were able to fill or were attempting to fill orders therefrom, or any of complainant's orders or contracts, or that defendants had ever deceived any of their customers by leading them to believe that they were dealing with complainant. And it appears that at the time of the final hearing there were no facts justifying any claim of any wrongful acts or intention on the part of defendants. Undoubtedly some of the defendants wrote letters which they should not have written. On the other hand, it is manifest now that complainant obtained an ex parte preliminary injunction upon bill and affidavits which gave the court to understand that defendants were about to make use of drawings and patterns the property of complainant, but then in defendants' possession, when the fact was, as above shown, that before the bill was filed such property was actually in complainant's possession or under its control.

Under such circumstances an injunction thus obtained should not be continued, unless its continuance be essential to preserve complainant's rights. No such necessity was apparent; after the new concern, under a name which was not misleading as to identity, went into business as a competitor of the New Haven Company's vendee.

The order restraining defendants "from using any and all information in reference to the business of the New Haven Car Register Company, obtained while in its employ, and which information could only have been obtained by the confidential relationship existing by such employment," is manifestly too broad. It is not within the letter or spirit of the cases cited by complainant in its support.

So much of the decree as grants an injunction is reversed, without costs. The decree ordering an accounting is affirmed, without costs.