**LENROOT, Chief of Children's Bureau, U. S. Department of Labor, v. INTERSTATE BAKERIES CORPORATION.**

No. 1467.

District Court, W. D. Missouri, W. D.

April 28, 1944.

Reid Williams, Acting Regional Atty., U. S. Department of Labor, of Kansas City, Mo., Douglas B. Maggs, Sol. and Irving J. Levy, Acting Sol., both of Washington, D. C., Kenneth P. Montgomery, Regional Atty., of Chicago, Ill., and James H. Snyder, Associate Atty. U. S. Department of Labor, of Kansas City, Mo., and Julius Schlezinger, Child Labor Supervising Atty., of Washington, D. C., for plaintiff.

John C. Grover and James G. Kimbrell, both of Kansas City, Mo., for defendant.

REEVES, District Judge.

The only question for decision in this case is whether a permanent injunction should be granted against the defendant to prevent violations of the federal Child Labor Law.

The action was instituted under the provisions of Sections 203, 211, 212 and 217, 29 U.S.C.A., relating to the general subject of Labor and particularly to Fair Labor Standards and the employment of children in manufactories. The claimed violations relate to the employment of minors in the production of goods in interstate commerce in violation of the "oppressive child labor" provision of said sections. By the provisions of paragraph (*l*) of said section 203 " 'oppressive child labor' " is defined to be the employment of minors "under the age of sixteen years."

It is averred in the complaint that the defendant in its manufacturing plants employed "many minors under sixteen (16) years of age." This was denied by the defendant.

The evidence showed that the defendant was and is engaged in the wholesale production of bread, cakes and bakery products for interstate commerce and that shipments in interstate commerce are continually being made.

Every necessary element was alleged and proved to confer plenary jurisdiction on the court.

The defendant operates many plants or establishments in sixteen states. Evidence of violations of the law, however, was limited to a plant in Cincinnati, Ohio, and one in Kansas City, Missouri. Each of these plants employs continuously between four and five hundred persons, or an aggregate for the two plants of approximately nine hundred employees. The proof related to a single employee under sixteen years of age in the Cincinnati plant. Other violations were the employment of minors in a Kansas City plant.

The evidence showed that eight minors were employed in violation of the law in a Kansas City plant and one in a Cincinnati plant prior to the filing of the petition and that six other minors below sixteen years of age had been employed in a Kansas City, Missouri, plant after the complaint was filed.

At the time of the trial each of the persons named as illegally employed had either attained the lawful age for the employment or had been discharged. Moreover, the evidence was that with negligible exceptions each of the minors employed contrary to the statute was near his sixteenth birthday at the date of employment and that such

employment was for the most part for very brief periods.

The employees of the plant at Kansas City were at all times organized in a union.

Until late in the year 1942 the defendant obtained its employees through the agency and instrumentality of the union. The contract with the union provided that each and every employee should be furnished by the union except in cases where the union was unable to meet the demands of the defendant for labor. Some time in the latter part of the year 1942 the ever-increasing manpower shortage was such as to make the union unable to supply the needs of the defendant. The exception in the union contract is as follows:

"However, if the Union is unable to supply the necessary help, the employer must secure such help elsewhere."

Prior to the shortage in labor, occasioned of course by war conditions, the defendant had relied upon the union to supply employees competent and qualified under the law. When the manpower shortage became acute, the defendant, through its proper agents and officers, obtained permission from the union to select other employees not members of the union. Such permission was freely granted in cases where the union was unable to furnish labor. In such cases the responsibility with respect to the age of the employees was necessarily assumed by the defendant. Under the stress of war conditions and because of the circumstance that emergency measures were constantly challenging and engaging the attention of defendant's officers, and, moreover, due to pressing demands for its products, the defendant did not require birth certificates in advance of the employment, but rather delayed acquiring such protective information until after the employee had commenced work. In many cases the minor avowed an age greater than that actually attained. In one or two cases, and particularly in one case, a minor was employed whose father was connected with the defendant's plant in an important capacity. Most of the minors were nearly sixteen years of age at the time they were employed. The company, however, had been admonished by plaintiff's representatives that it should not employ minors and a procedure to avoid deception or a mistake in thus employing minors below sixteen years of age had been outlined by agents for the plaintiff. The officers of the

defendant, both by communications to superintendents and to plant managers and in interviews with representatives of the plaintiff, had continually evinced a disposition to comply with the provisions of the law. At the time suit was filed the eight employees on whose employment the complaint was based had reached the age of sixteen. After the suit was filed, minors were employed who had not attained the age of sixteen years. In a majority of cases, however, such minors were employed in work which tolerated their employment under a regulation promulgated by the plaintiff, or, at least it was so believed by the defendant. In other cases either deception had been practiced upon defendant or the tremendous pressure and stress of war demands had caused one of the plant foremen to relax and evade the rule in a single case. Such act, however, was without the knowledge or approval of the company officials.

On the question as to whether an injunction should be issued, evidence of subsequent violations was admitted over the strenuous objections of the defendant. It appeared from the evidence that, in addition to violations of the national law, the state law in like manner had been violated.

All of these are matters which bear importantly on the question as to whether an injunction to restrain future violations ought to be granted. These questions will be discussed in the course of this memorandum opinion.

■ 1. At the outset it should be recalled that the child labor provisions of the law were enacted in the year 1938, and its purposes were both economical and sociological. The entire nation had been affected with a depression that was world-wide. It was desirable to protect adult employees against the competition of minors. Moreover, the Congress was afforded an opportunity by reason of prevailing conditions to enact a law long agitated and exceedingly desirable to protect children against harmful labor. Previous legislation had failed to meet judicial approval. Hammer v. Dagenhart, 247 U.S. 251, 38 S.Ct. 529, 62 L.Ed. 1101, 3 A.L.R. 649, Ann.Cas.1918E, 724. But such legislation was, in effect, approved in United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430. The legislation was preeminently a peacetime enactment. No question, however, is made but that its effectiveness is desirable during the stress and strain of war. However, many emergency enactments, while not supplanting peacetime legislation, do, in fact, to a degree subordinate it to the more pressing questions of wartime.

■ The officers of the defendant were confronted with multiple directives and regulations. These occupied the attention of such officers somewhat to the exclusion of questions presented here. The court must take judicial notice of war conditions, emergency enactments and regulatory orders as outstanding contemporaneous facts. In some instances appropriate peacetime provisions relating to labor have been suspended by executive direction. These suggestions bear on the question of the awareness of defendant's officers with respect to the law invoked in this case.

2. The defendant has many thousands of employees. The plaintiff has obligingly summated the total number of days worked by minors below the age of sixteen years in violation of law. Over a period of approximately 18 months the total number of days exceeded but slightly one year. In the two plants during the same period all of the other employees of the two plants labored an aggregate on the same basis of more than a thousand years.

When stripped of the deception practiced upon defendant, there would remain only one or two unjustified violations of the statute, and the policy-making authority was not apprised of such violations.

■ 3. The evidence of subsequent violations was admitted subject to the objections of the defendant. Such evidence was proper. The only question for decision is whether the conduct and attitude of the defendants with respect to compliance with the law would warrant the injunctive relief sought. This evidence bore upon this question and had probative force. On the other hand, the plaintiff strenuously denies the application of certain regulations of the plaintiff because not pleaded by the defendant. Evidence as to Regulation No. 3 was competent as indicating the attitude of the defendant's officials. It is one thing to violate the law wilfully and another if done with a misunderstanding of the law. If the defendant believed that it was acting in compliance with Regulation No. 3, with respect to the employment of minors below the age of sixteen and over fourteen years in certain branches of its operation,

then the defendant was not indifferent to the law nor was it wilfully and intentionally violating its provisions.

4. In argument, it is contended by the plaintiff that as an earnest of the defendant's good faith the foreman who employed a minor in the face of the law and with knowledge of its provisions should have been discharged. Doubtless there are circumstances where such a course would have been warranted and where just criticism could be made for failure to take such action. In this case the foreman frankly acknowledged his act. It was done at a time when the demand for labor was very great. He was earnestly endeavoring to meet the needs of a war condition. In his mind the emergencies of the hour were paramount to a strict observance of the child labor law. His zeal to meet public demand for the product of his employer would plead for his pardon and would stay the poised hand that holds the lash above his exposed and defenseless back. The public interest forbade his discharge at such a time. Moreover, the object of the child labor law was to meet conditions where sordid greed sought to profit from the stunted and broken bodies of little children. There was no such objective in this case.

5. The managing and responsible officials of the defendant have indicated their entire willingness and desire to comply with the law. If they have transgressed or even been indifferent toward the law it has been because of emergencies that necessarily challenged and engaged their attention and subordinated in their minds the careful technical observation of the law properly sought to be enforced by the plaintiff.

While the law probably was never intended to apply to manufacturing establishments conducted as this one and to violations as limited as in this case, yet the lawmakers made no exceptions, nor could they without impairing the usefulness of the benign legislation.

6. It is conceded that the matter of granting an injunction is within the sound discretion of the court. Such discretion, of course, is subject to abuse. Recent cases are helpful in determining whether a sound discretion in this case would warrant the court in denying an injunctive order.

The case of Hecht Company v. Chester Bowles, etc., 64 S.Ct. 587, 589, decided by the Supreme Court on February 28th last, is enlightening. In that case the court was dealing with an acute emergency situation. Great emphasis was placed upon the importance of preventing a ruinous inflation. The petitioner in that case, according to the findings of the court, had committed "numerous violations both as respects prices and records." In fact, there had been discovered "between May and October, 1942 some 3700 sales in excess of the maximum prices with overcharges of some $4600." Again, "The statements filed with the Administrator were deficient, some 400 items of merchandise being omitted. And there were over 300 items with respect to which no records were kept showing how the maximum prices had been determined."

In that case the District Court was of the opinion that the "issuance of an injunction would have 'no effect by way of insuring better compliance in the future' and would be 'unjust' to petitioner and not 'in the public interest'." The complaint was dismissed, Brown v. Hecht Co., D.C., 49 F. Supp. 528.

The Court of Appeals, however, 137 F. 2d 689, reversed the lower court. The petitioner obtained a review by the Supreme Court which in turn reversed the Court of Appeals and sent the case back to the Court of Appeals with instruction to determine whether or not the trial judge had abused his discretion.

The entire opinion teems with intimations that since the officers of the petitioner acted in good faith there would be no virtue in granting an injunction. Moreover, an injunction is an extraordinary and radical remedy. The Supreme Court of the United States, in Truly v. Wanzer et al., 5 How. 141, 46 U.S. 141, loc. cit. 142, 143, 12 L.Ed. 88, said, in reference to granting an injunction:

" 'There is no power, the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing an injunction. It is the strong arm of equity, that never ought to be extended, unless to cases of great injury, where courts of law cannot afford an adequate and commensurate remedy in damages. *The right must be clear, the injury impending, and threatened so as to be averted only by the protecting preventive process of injunction.' "*

238

In the more recent case of Packard Paper Box Co. et al. v. O. B. Andrews Co., 1 Cir., 67 F.2d 783, loc. cit. 784, the court said:

"While the granting or withholding of a preliminary injunction rests largely in the discretion of the trial judge, *it is well settled that ordinarily it ought not to be granted unless the plaintiff's probable right to relief appears clear. * * * The mere fact that the grant of an injunction will occasion less harm to the defendant than the refusal of it will occasion to the plaintiff, while of course a circumstance to be considered, is by no means decisive, as was expressly held in International Register Co. v. Recording Fare Register Co.*, 2 Cir., 151 F. 199, 202."

The District Judge of the District of Montana, in Great Northern Ry. Co. v. Local Great Falls Lodge of I. A. of M., 283 F. 557, loc. cit. 563, epitomized the law when he said:

"Injunctions go only in cases of urgent necessity, made to appear by competent, material, credible, and preponderating evidence, to guard against injuries, not merely feared by the applicant, but reasonably to be apprehended, and likely to be irreparable. They are extraordinary remedies, granted with great caution, and in the exercise of sound judicial discretion."

Probably the best statement on the subject was made by the Court of Appeals, Second Circuit, in International Register Co. v. Recording Fare Register Co., 151 F. 199, loc. cit. 202, where the court said:

"It is not sufficient ground for an injunction that obedience to it will not hurt defendants. Nor is it any answer to the assignments of error by defendants that 'there is nothing in the injunction that would interfere with an honest man conducting his business unhindered by any restriction.' *The mere fact of the issuance of any sort of an injunction stigmatizes the defendants as having done or threatened to do some illegal or inequitable act of such a nature as to justify such extraordinary relief, and, if cleverly advertised, may hurt the defendants in their business world.*"

A careful review of the evidence justifies the statement that the officers of the defendant and those who are responsible for its policies are neither defiant of the law nor are they indifferent to its observance. They have earnestly evinced,

not only a desire, but a purpose, to comply with the law. The facts do not contradict their good intentions. If they should again violate the law in such manner as to warrant another proceeding, this decision is not res judicata. While the defendant should not employ minors in the future, it should be careful to conform to the law, yet the evidence of sporadic violations of the law as disclosed by this record would not work an irreparable injury upon the government, to the public, nor even upon the children employed.

In the exercise of a sound discretion the injunctive relief sought should be denied, and it will be so ordered.