**WALLING, Adm'r, Wage and Hour Div., U. S. Department of Labor, v. CLINCH-FIELD COAL CORPORATION.**

**No. 5518.**

Circuit Court of Appeals, Fourth Circuit.

Dec. 24, 1946.

Morton Liftin, Asst. Sol., U. S. Department of Labor, of Washington, D. C. (William S. Tyson, Sol., of Washington, D. C., Beverley R. Worrell, Regional Atty., of Richmond, Va., George M. Szabad and Helen Grundstein, Attys., both of Washington, D. C., on the brief), for appellant.

William A. Stuart, of Abingdon, Va., (A. G. Lively, of Lebanon, Va., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the Western District of Virginia dismissing a complaint for an injunction sought by the Administrator of the Wage and Hour Division, United States Department of Labor (hereinafter called the Administrator), under Section 17 of the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq. (hereinafter called the Act), for the purpose of restraining the Clinchfield Coal Corporation (hereinafter called Clinchfield) from violating certain provisions of the Act.

Two questions are now presented for our consideration: (1) Whether the Administrator, on the pleadings filed, should have been permitted to offer evidence of alleged violations for extra "face-to-face" activities of Clinchfield's employees; and (2) Whether certain foremen of Clinchfield may be classified as "executives," who are expressly exempted from the purview of the Act.

Clinchfield, the appellee, is a Virginia corporation that has been engaged in the mining, sale and distribution of coal located at Dante and Clinchco, Virginia, during the period in question. In March, 1943, the Administrator filed a complaint alleging that Clinchfield had violated certain overtime and record-keeping provisions of the Act and prayed for an order enjoining such violations. The District Court found that the violations mentioned had occurred with respect to various employees. The court refused to issue the injunction, however, because it also found that the violations had been inadvertent and not wide-spread, and that Clinchfield at all times endeavored to comply with the Act. It found further that the violations complained of ceased altogether in November, 1943, and the likelihood of future violations was eliminated by a change in the operation of the mines to a portal-to-portal basis. The Administrator does not appeal from that part of the judgment denying an injunction with respect to those inadvertent violations (just mentioned) of the Act as to pay for the employees involved, who were not foremen.

■ We come then to the point first mentioned as to whether the lower court erred in refusing to allow the evidence offered by the Administrator concerning extra face-to-face time. It appears that the Administrator's original complaint was couched in very broad terms and could be said to cover almost any case of the present general type. Clinchfield duly moved for a bill of particulars. In granting the motion, the court instructed the Administrator to set forth the particular periods of time involved, the manner of arriving at the overtime, as well as the specific respects in which the violations took place. The Administrator furnished a bill of particulars with statistical information as to the daily and weekly time actually recorded, the daily and weekly time claimed to have been worked, the wages actually paid and the amount of the alleged under-payment. It did not, however, set forth the particular respects in which the violations took place. Thereafter, when evidence was offered by the Administrator as to extra face-to-face work, the court below either refused to permit the introduction of the testimony or

struck from the record any evidence that was introduced on that subject. We are of the opinion that there were ample and proper reasons for this ruling by the lower court.

It will be recalled that at the time the complaint was filed, the entire bituminous industry was operating on pay periods based on the face-to-face scale. Accordingly, there was no basis at that time for Clinchfield to anticipate that any extra face-to-face questions of time would arise, despite the broad language of the complaint. Again, in the same connection, the bill of particulars filed by the Administrator on October 6, 1943, was several months prior to the District Court's ruling upholding the face-to-face basis in the case of Jewell Ridge Coal Corporation v. Local 6167, United Mine Workers of America, 1944, D.C.W.D.Va., 53 F.Supp. 935, but a year before this Court reversed the District Court and allowed the so-called portal-to-portal basis for computing time. 4 Cir., 145 F.2d 10, decided October 6, 1944. Therefore, although the Administrator claims "make ready" time is included in the bill of particulars, he was nevertheless bound by the face-to-face scale and there was no way in which the court or Clinchfield could have known that he intended to present, by those pleadings, the issues as to extra face-to-face time. Furthermore, when the pre-trial conference was held, the question was specifically raised whether the issues in the case were confined to the face-to-face basis and Counsel for the Administrator gave assurances that the issues were so confined. Nevertheless, the Administrator, from time to time during the trial, did attempt to introduce evidence of extra face-to-face activities. On each such occasion, the lower court instructed the Administrator that it did not consider that question in the case, but suggested that if the Administrator would amend his pleadings so as to raise the issue, the evidence would then be admitted. Although the Administrator indicated an intention on a number of occasions to amend his pleadings, this was never done and no adequate explanation was offered for the failure to amend. From these developments, it cannot be questioned that the lower court was

well within its discretion in refusing the proof offered. A contrary ruling on an issue so dubiously presented by the pleadings would have been manifestly unfair to Clinchfield.

The Administrator insists, however, that the evidence was excluded by the lower court's mistaken assumption that "make ready" time was part of the portal-to-portal question. A sufficient answer to this, we think, has already been suggested in that the Administrator himself was bound at the time of the pleadings to the face-to-face basis. Even if this were not so, there is no merit in the argument advanced. The entire history of the cases involving portal-to-portal questions reveals that the "make-ready" issues were incorporated in the adjudications; Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, D.C., 40 F.Supp. 4; Id., 5 Cir., 135 F.2d 520; Id., 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949, 152 A.L.R. 1014; Jewell Ridge Corporation v. Local 6167, United Mine Workers of America, D.C., 53 F.Supp. 935; Id., 4 Cir., 145 F.2d 10; Id., 325 U.S. 161, 65 S.Ct. 1063, 89 L.Ed. 1534. There is nothing in the case of Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 693, 66 S.Ct. 1187, 1195, decided June 10, 1946, relied on by the Administrator, to suggest the contrary for that case specifically states that "make-ready" activities " * * * Are clearly work falling within the definition enunciated and applied in the Tennessee Coal and Jewell Ridge cases."

Turning now to the second question relating to whether certain of Clinchfield's foremen are "executives," we find that Sec-

tion 13(a) (1) of the Act exempts from the wage and hour provisions any "Employee employed in a bona fide executive * * * capacity * * * (as such terms are defined and delimited by regulations of the Administrator)." Pursuant to this authority, the Administrator undertook to define an executive by prescribing six tests,[1] only one of which could be questioned as not being satisfied in the present case. The appropriate regulation (Section 541.1, 29 Code of Fed.Reg.Cum.Supp.) provides that an executive, among other things, must be one " * * * who is compensated for his services on a salary basis of not less than $30 per week * * *."

In compliance therewith, Clinchfield placed its foremen on a pay scale of $31.60 per week with the proviso that unless they reported for work not less than four days per week they would be docked. The general tipple foremen were placed on a pay scale of $30 per week with the proviso that unless they reported for work not less than 35 hours per week, they would be docked. Additional pay was provided for both classifications for all work over these minima. The assistant foremen were placed on a salary of $30.75 per week, but since these were merely supply foremen who acted as foremen only in the absence of the regular foremen and at all other times had the status of non-supervisory hourly rated employees, their status is not here material. All of the foremen in question were informed that they were guaranteed pay for the minimum number of days or hours as the case might be, and that if there was no work at their particular mine

---

[1] These tests, set forth in 29 Code of Fed.Reg. § 541.1, Cum.Supp., are as follows: "Executive. The term 'employee employed in a bona fide executive * * * capacity' in section 13(a) (1) of the Act shall mean any employee: (a) Whose primary duty consists of the management of the establishment in which he is employed or of a customarily recognized department or subdivision thereof, and (b) Who customarily and regularly directs the work of other employees therein, and (c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight, and (d) Who customarily and regularly exercises discretionary powers, and (e) Who is compensated for his services on a salary basis at not less than $30 per week (exclusive of board, lodging, or other facilities) and (f) Whose hours of work of the same nature as that performed by nonexempt employees do not exceed 20 percent of the number of hours worked in the workweek by the nonexempt employees under his direction; Provided; That this paragraph shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment."

up to that number of days or hours in any particular week, they would be paid notwithstanding, if they reported for work. We think this amounted to a substantial compliance with the Regulations. While it might be plausibly urged that this pay system was akin to a shift rather than a weekly basis, we cannot ignore evidence revealing the good faith of Clinchfield in attempting to determine the meaning of a Regulation that was the source of much confusion and, in fact, had been amended once prior to the complaint (the original regulation had provided for a "work week" instead of "on a weekly basis," Section 541.1, 29 Code of Fed.Reg.) and had to be clarified again after the issues in this case were drawn. Release A-9, 7 Wage Hour Rept. 858, Aug. 24, 1944. Obviously this last release can have no bearing on the present case as there is no evidence that Clinchfield has violated its terms. It does show, however, that confusion inhered in the earlier expressions by the Administrator. We conclude, therefore, that for the period involved, there was substantial compliance by Clinchfield with the provisions of the Regulation and that the foremen in question were exempt as executives within the meaning of the Act.

█ For the reasons assigned, we find no basis for granting the injunction sought by the Administrator. Yet aside from all the foregoing, we think there is another, and perhaps more compelling, reason to deny the injunction. On May 21, 1946, pursuant to powers granted in the Selective Training and Service Act of 1940, § 9, 54 Stat. 892, as amended by the War Labor Disputes Act, 57 Stat. 163, 50 U.S.C.A.Appendix, § 309, the President of the United States authorized Government seizure of the mines by Executive Order 9728. The mines have been in the possession and under the supervision and control of the Government ever since. All questions involving hours, rates of pay and conditions of employment are controlled by a contract consummated between the Secretary of the Interior and the United Mine Workers, dated May 29, 1946, and any questions as to wage and hours must be primarily between the Wage and Hour Division of the Department of Labor on the one hand and the Department of the Interior and the United Mine Workers on the other. And while the Executive Order recognizes that Government seizure is only a temporary emergency measure and directs that this "* * * Order shall be terminated by the Secretary of the Interior as soon as practicable, * * *" (Executive Order 9728, Section 8), we cannot overlook the fact that Clinchfield is not in control and there is no convincing suggestion that this employer, heretofore acting in good faith, will not continue to so do and to fully comply with the provisions of the Act, once possession and control of the mines are regained. That fact clearly distinguishes this case from cases such as Walling v. Haile Gold Mines, 4 Cir., 136 F.2d 102.

█ There can be no question but that the usual equity rules applicable to injunctions are to be regarded in considering an application for that remedy under the Act. Fleming v. Phipps, D.C., 35 F.Supp. 627. For, as was said in Walling v. Associated Truck Lines, D.C., 57 F.Supp. 943, 945: "The rule is well settled that the extraordinary writ of injunction will not issue for the purpose of punishing past offenses, but will issue only in those cases where the court is convinced that such relief is necessary to prevent future violations."

Again, as was said in International Register Co. v. Recording Fare Register Co., 2 Cir., 151 F. 199, at page 202: "The mere fact of the issuance of any sort of an injunction stigmatizes the defendants as having done or threatened to do some illegal or inequitable act of such a nature as to justify such extraordinary relief * * *."

We think these principles are too well settled to bear additional discussion.

The judgment of the District Court dismissing the complaint is affirmed.

Affirmed.