### Volunteer Child Services

GORNISH, *Acting Attorney General,* SKUBECZ, *Deputy Attorney General,* August 31, 1978—You have asked for our opinion as to whether children under 16 years of age may perform volunteer activities within our state parks and state forests such as trail maintenance, litter removal, and tree planting. You have indicated that civic organizations and service clubs conduct such programs with children participating and that the Boy Scouts of America routinely request permission to

engage in these and similar conservation projects as part of their merit badge program. In the context of the foregoing, you have questioned us as to what bearing, if any, the Pennsylvania Child Labor Law of May 13, 1915, P.L. 286, as amended, 43 P.S. §41 et seq., and the Federal Fair Labor Standards Act of June 25, 1938, sec. 1, 52 Stat. 1060 et seq., 29 U.S.C.A. §201 et seq., may have on the involvement of our young people with respect to these activities. It is our opinion, and you are hereby advised, that neither the Pennsylvania Child Labor Law nor the Federal Fair Labor Standards Act of 1938 proscribes the performance of volunteer conservation and clean-up activities by children in our parks or forests.

It is clear that the Federal Fair Labor Standards Act of 1938 does not present an impediment to the volunteer services that you contemplate. This act sets the minimum wage for the nation, among other things, and concerns itself with the introduction of goods and services into the channels of interstate commerce. The purpose of the act is to "prohibit the shipment of goods in interstate commerce if they are produced under substandard labor conditions" and to "eliminate substandard labor conditions, including child labor." Roland Electrical Co. v. Walling, 326 U.S. 657, 669, 670 (1946).

Section 212(a) of the act is the basic child labor provision and states that: "No producer, manufacturer or dealer shall ship or deliver for shipment in commerce any goods produced in an establishment . . . in or about which . . . any oppressive child labor has been employed."

"Oppressive child labor" is defined at section 203(l). The operative elements of the definition are "a condition of employment under which (1) any

employee under the age of sixteen years is employed . . . in any occupation, or (2) any employee between the ages of sixteen and eighteen years is employed . . . in any occupation . . . particularly hazardous for the employment of children between such ages or detrimental to their health or well-being . . ."

The activities you have described and to which the children volunteers shall lend their hands do not appear to involve any consideration of products being introduced into interstate commerce. Nor does it appear to involve steps preparatory to the introduction of goods or services into interstate commerce. Therefore, an analysis of the concept of "oppressive child labor" need not be conducted in reaching a conclusion regarding the applicability of the Federal Fair Labor Standards Act of 1938. However, by referring to the concept of "oppressive child labor," the purpose of the inclusion of the child labor provision in the act is underscored.[1]

"The history of the statute is consistent only with the conclusion that Congress intended to keep the arteries of commerce free from pollution by the sweat of child labor." Lenroot v. Western Union Telegraph Co., 52 F. Supp. 142, 147-48 (S.D. N.Y. 1943), reversed on other grounds, 323 U.S. 490 (1945).

---

1. In Lenroot v. Interstate Bakeries Corporation, 55 F. Supp. 234, 236 (W. D. Mo. 1944), it was observed that the child labor provisions of the statute were enacted because it was deemed desirable "to protect adult employees against the competition of minors" and because Congress was afforded an opportunity, primarily by the advent of the depression, "to enact a law long agitated and exceedingly desirable to protect children against harmful labor."

Because the Fair Labor Standards Act is not applicable on the grounds demonstrated above, it is not necessary to treat other concepts contained in section 203 of the statute such as "employer," "employee" and the precise meaning of the word "employ." It suffices to say that the incidence of the statute is founded upon the general principle that:

"The ban of the statute is against shipment or delivery for shipment, in commerce . . . of any goods produced in an establishment . . . in or about which any oppressive child labor has been employed." Lenroot v. Western Union Telegraph Co., supra, at 147.

Turning now to Pennsylvania's Child Labor Law. The most important sections of the Child Labor Law for the purposes of this discussion are section 42 which states, in relevant part, that: "No minor under sixteen years of age shall be employed or permitted to work in, about, or in connection with, any establishment or occupation . . ." and section 41 which defines the term "establishment": "Any place within this Commonwealth where work is done for compensation of any kind, to whomever payable . . ."

Only one Pennsylvania case can be found which analyzes in any depth the phrase "permitted to work in, about or in connection with any establishment where work is performed by others for compensation." In Com. v. McKaig, 29 D. & C. 629 (C.P. Phila. 1937), the word "work" was treated exhaustively after being identified as the most critical element when assessing the circumstances under which the act should be applied. We will treat McKaig in detail because of its status as the only

Pennsylvania case bearing directly on your questions. First, we will concede that a sound argument can be made that a state park or state forest is an "establishment" where work is performed for compensation and do thereby dispense with the need to discuss section 42 directly. We will also note that the absence of compensation for the children volunteers is not crucial in determining whether the Child Labor Law is to be given effect: McKaig at p. 632; also see Brock v. Bowser, 376 Pa. 209, 102 A. 2d 121 (1954). These matters aside, we now turn to an analysis of the ruling in McKaig.

The facts in McKaig can be briefly summarized. A skating arena that was commonly used for public entertainment was privately leased for the purpose of an ice skating competition. There were amateur skating contests in the afternoon. At night, there were three skating exhibitions. One exhibition was given by a nine-year-old child, one was given by an amateur adult, and one was given by a professional ice skater, who was paid for performing. The entire program was conducted on a nonprofit basis. An admission fee was charged of the spectators. While the three skaters were part of a complete show for that evening, they performed independently of one another. With respect to the minor, the "child's skating was in no way linked with the professional's exhibition . . . Her display of skill was not performed as a part of the work of the professional."

In ruling that the child skater's performance was not "work" within the meaning of the Child Labor Law, the court placed great significance on the child having not been a part of the professional's act. From this, the court arrived at a test for deciding whether any given activity is work as contemplated by the Child Labor Law; "whether or not the child's activities at a particular establishment

are so connected with the work of others as to be immediately supplementary thereto or in direct aid thereof."

If we were to take the language of this test standing alone, we would be led into a discussion of whether, for instance, the planting of trees by Boy Scouts is "immediately supplementary to . . . or in direct aid" of the paid, professional park and forest employes. In another vein, we could be drawn into a discussion of how a recent amendment to the Child Labor Law, 43 P.S. §48.3(b), permitting children under 16 to perform clean-up services as members of volunteer forest fire crews is to be compared with the general clean-up activities these children will perform. This is not necessary.

We do not consider the word "work" and the construction given that word in McKaig as controlling. The test developed there was particularly tailored to the unique factual circumstances. The court in McKaig was apparently fearful of the situation where a minor is made an integral part of an adult professional show business performer's act and exploited thereby. The minor, presumably, would view the entire situation as one involving fun or play and not work as adults would understand the concept. The activities assumed under your question do not carry with them the same potential for exploitation as was found in McKaig. Therefore, we should be guided by the broader principles enunciated in McKaig and look to the general purpose of the Child Labor Law for direction.

"Child labor laws are highly remedial in character, being intended to protect children, in their healthful development to adult age, from exploitation by business and industry, and to ensure to them, in the interests of the public welfare, that

condition of freedom from debilitating spiritual and physical labor in which alone they can develop into fully efficient economic and social units of the State. Hence such laws should receive a reasonably liberal interpretation to effect their beneficial objects. Nevertheless their penal provisions cannot be extended by interpretation to include those activities of children which are not essentially 'work' in its ordinarily accepted meaning, or which cannot fairly be said to tend to the exploitation of the labor of children for commercial or other remunerative purposes." 29 D. & C. at 631.

It is our belief that the activities in which the youthful volunteers will participate cannot be considered to be work violative of the Pennsylvania Child Labor Law without ignoring and perverting the very purpose for which the law was enacted.[2]

In conclusion, it is our opinion, and you are hereby advised, that neither the Federal Fair Labor Standards Act of 1938 nor the Pennsylvania Child Labor Law has the effect of prohibiting the performance of conservation and clean-up services within our state parks and state forests by children under 16 years of age as part of volunteer programs. It is our belief that such programs comport with the beneficial opportunities these laws were intended to confer upon our youth. Permitting children to engage in conduct under the general heading of "nature appreciation" does not "tend to the exploitation of the labor of children for commercial or other remunerative purposes." There appears no

---

2. In the case of the Federal statute and its child labor provisions, one purpose was to prevent persons from profiting from the "stunted and broken bodies of little children." Lenroot v. Interstate Bakeries, supra at footnote 1.

likelihood that any of the children who will partake in these programs will be exploited because of greed or any other sordid motive. Therefore, the protective provisions of these laws are not to be applied.

