LENROOT, Chief of Children's Bureau, United States Department of Labor, v. INTERSTATE BAKERIES CORPORATION.

No. 12935.

Circuit Court of Appeals, Eighth Circuit.

Jan. 2, 1945.

Bessie Margolin, Assistant Solicitor, Department of Labor, of Washington, D. C. (Douglas B. Maggs, Solicitor, of Washington, D. C., Reid Williams, Regional Attorney, of Kansas City, Mo., and Westley W. Silvian, Attorney, United States Department of Labor, of Washington, D. C., on the brief), for appellant.

James G. Kimbrell, of Kansas City, Mo. (John C. Grover, of Kansas City, Mo., on the brief), for appellee.

Before GARDNER, WOODROUGH, and JOHNSEN, Circuit Judges.

WOODROUGH, Circuit Judge.

This civil action was brought under section 17 of the Fair Labor Standards Act of 1938, c. 676, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq., by the Chief of the Children's Bureau of the United States Department of Labor, against the bakeries' corporation, to restrain defendant from violating section 15 (a) (4) of the Act. After trial, the district court denied relief and dismissed the suit in accordance with findings and conclusions and an opinion reported in 55 F.Supp. 234. The appeal is to reverse the judgment.

The statutory provisions directly relevant are sections 3(*l*), 12(a), 15(a) (4) and 17 of the Act.[1] They prohibit any producer, manufacturer or dealer from shipping in interstate commerce any goods produced in an establishment in or about which within thirty days prior to the removal of such goods therefrom, any oppressive child labor has been employed; declare that it shall be unlawful for any person to violate the prohibition, and confer jurisdiction upon the district court for cause shown to restrain such violations. Oppressive child labor is defined to mean a condition of employment under which any employee under the age of sixteen years is employed by an employer (other than a parent or a person standing in the place of a parent employing his own child or a child in his custody in an occupation other than manufacturing or mining) in any occupation. The Chief of the Children's Bureau is empowered to provide by regulation or by order that the employment of employees between the ages of fourteen and sixteen years in occupations other than manufacturing and mining, shall not be deemed to constitute oppressive child labor if and to the extent that the Chief of the Children's Bureau determines that such employment is confined to periods which will not interfere with their schooling and to conditions which will not interfere with their health and well-being. Oppressive child labor shall not be deemed to exist by virtue of the employment in any occupation of any person with respect to whom the employer shall have on file an unexpired certificate issued and held pursuant to regulations of the Chief of the Children's Bureau, certifying that such person is above the oppressive child labor age.

It appears that the bakeries corporation is a large concern, having its home office at Kansas City, Missouri, and operating many mechanized bakeries in some sixteen states of the Union, employing several thousand persons and transporting its bakery products in interstate commerce. The evidence clearly established, and the trial court found that the corporation employed fourteen under-age children among some 450 employees at its plant at Kansas City, Missouri, for various periods of time between the dates of June 15, 1942, and October 16, 1943. This suit was filed on April 13, 1943. Eight of the children were so employed before that date and six afterwards. The ages of the children ranged from fourteen to a few months under sixteen. The corporation had no certificate from the Bureau relating to any of the children and it had not been deceived in respect to the age of any one, but had been put on notice of their ages. Within thirty days after the employment of the children, products of the Kansas City establishment in which they were employed were shipped in interstate commerce.

On this appeal the corporation has presented no contention that it did not commit the violations of the Act at its Kansas City plant at the times stated, but it contends

---

[1] "Section 3(*l*). 'Oppressive child labor' means a condition of employment under which (1) any employee under the age of sixteen years is employed by an employer (other than a parent or a person standing in place of a parent employing his own child or a child in his custody under the age of sixteen years in an occupation other than manufacturing or mining) in any occupation, * * *; but oppressive child labor shall not be deemed to exist by virtue of the employment in any occupation of any person with respect to whom the employer shall have on file an unexpired certificate issued and held pursuant to regulations of the Chief of the Children's Bureau certifying that such person is above the oppressive child-labor age. The Chief of the Children's Bureau shall provide by regulation or by order that the employment of employees between the ages of fourteen and sixteen years in occupations other than manufacturing and mining shall not be deemed to constitute oppressive child labor if and to the extent that the Chief of the Children's Bureau determines that such employment is confined to periods which will not interfere with their schooling and to conditions which will not interfere with their health and well-being."

"Section 12 (a). After the expiration of one hundred and twenty days from the date of enactment of this Act, no producer, manufacturer, or dealer shall ship or deliver for shipment in commerce any goods produced in an establishment situated in the United States in or about which within thirty days prior to the removal of such goods therefrom any oppressive child labor has been employed."

"Section 15 (a). * * * It shall be unlawful for any person * * * (4) to violate any of the provisions of section 12."

"Section 17. The district courts of the United States and the United States courts of the Territories and possessions shall have jurisdiction, for cause shown * * * to restrain violations of section 15."

that no injunction should be issued in the suit because "the violations, if any, do not exist at the present time, had not existed since long before the trial of this case (which was had in January, 1944) and no future violations are impending or threatened."

There is no evidence whether violations exist at the present time, and none as to whether they existed in the period "since long before the trial." Those that were established at the times specified by the evidence in the record were discovered by agents who went into the plant at Kansas City and saw the children at work there. It was not shown that there are other feasible means of knowing the truth available to the administrative agency. The proof by the Bureau that violations were occurring in the Kansas City plant in the course of the business as it was carried on by the corporation before the suit was commenced, and that they continued to occur after the suit was filed, permitted of no reasonable expectation for the future except that they would continue unless stopped by some change in the conduct of the business and of the agents of the corporation who hired the children and kept them at work. It is doubtless true, as found by the trial court, that certain managing officers of the corporation who shape its policies "acknowledge the binding force of the law", and there are letters from them to subordinates advising as to the relevant terms of the law and directing compliance. But there was no evidence that any officers of the corporation empowered and charged with responsibility had undertaken to formulate and enforce effective measures to see to it that compliance was accomplished and the law obeyed. Even after the suit was filed and the violations continued, there were no disciplinary measures of rebuke, withholding of promotion, admonition or otherwise, directed to individuals to justify any hope or expectation that the persons who hired the children would not do it again. Corporations act only through their agents and it was evident at the trial that the mere mandate of the law and the efforts of the administrative agency had not kept and would not keep children under sixteen from being worked contrary to law in the corporation's Kansas City plant.

That is the very situation in which section 17 of the Act contemplates that the district courts shall exercise the judicial power in aid of the administrative power.

The court and the Children's Bureau of the Department of Labor are the means adopted to attain the end prescribed by Congress of preventing unauthorized employment of children under the age of sixteen years in such an industry as the corporation's Kansas City bakery plant. Such employment is denounced by the Act as "oppressive child labor" and declared to be unlawful and the Bureau and the courts are the means adopted to abolish it. The Bureau can not carry the burden alone. Nor is it given powers adequate to enforce the will of Congress expressed in the Act. In this case its agents are shown to have used their efforts by instruction, explanation and persuasion, to prevail upon the corporation to put a stop to its oppressive child labor practices. Having failed in these efforts and brought the suit and proved the violations, the Bureau is at the end of its function.

■ The court should not administer section 17 grudgingly. Whatever personal opinion may persist that working children under sixteen years of age in mechanized industries is good for them, the declaration of Congress is unequivocally to the contrary that such employment of children is oppressive child labor and is unlawful except under regulations and certification by the Children's Bureau. Beyond all doubt determination of the public interest in the matter was for Congress, and its determination is binding on the courts. The Supreme Court points out that "a democratic society rests, for its continuance, upon the healthy, well-rounded growth of young people into full maturity as citizens, with all that implies", and it holds "the crippling effects of child employment" to be "among evils most appropriate" for legislative action. Prince v. Massachusetts, 321 U.S. 158, 168, 64 S. Ct. 438, 443.

■ It is true that the granting or withholding of injunction under section 17 is not mandatory. There remains a discretion in the court. But it is settled that it must be exercised in the light of the objective of the Act to abolish "oppressive child labor," and must be measured by the standards of the public interest in putting an end to that evil and not by the requirements of private litigation. Hecht Co. v. Bowles, 321 U.S. 321, 331, 64 S.Ct. 587.

In its second conclusion of law, the trial court summarized its reasons for the refusal to exercise judicial powers in aid of

328

the Bureau and for its dismissal of the action. In substance the court included as factors influencing the exercise of the discretion that the corporation's violations of the oppressive child labor law were not "seriously and injuriously" against the public interest; that the corporation gained no "advantage or special profit" from employing the children for short periods of time only, its agents acting in the matter without authority and contrary to its "declared policy."[2]

We are persuaded that the conclusions of law stated by the court are not in accord with the Act and are clearly erroneous. As we have pointed out, the Act does not leave the appraisal of the public interest in respect to the oppressive child labor, which it defines and denounces, to either personal or judicial opinion. That which the Act declares to be unlawful is against the public interest and is injurious to the public interest. It is also "serious", save as the law may not concern itself with trifles.[3]

Nor is the duty to enforce the Act affected by the presence or absence of special profit or advantage through its violation.[4] As to large industries like the bakeries' corporation, the Act contains no suggestion that the mere declaration by corporate officers of a policy of obedience to the law, or the absence of a grant of authority by them to the hiring foremen to disobey it, leaves the court with no duty of enforcement. On the contrary, such corporations must be held strictly accountable for the child labor violations of subordinates. Their duty does not end with mere directive communication to such subordinates. As pointed out by Judge Cardozo, in People v. Sheffield Farms-Slawson-Decker Co., 225 N.Y. 25, 121 N.E. 474, 476, the mandate of the statute is directed to the employer and "he may not escape it by delegating it to others." The "duty rests on the employer to inquire into the conditions prevailing in his business. He does not rid himself of that duty because the extent of the business may preclude his personal supervision, and compel reliance on subordinates. He must then stand or fall with those whom he selects to act for him. * * * the duty must be held personal, or we nullify the statute * * *." "The cases must be rare where prohibited work can be done within the plant, and knowledge or the consequences of knowledge avoided" (ibid.). These expressions applied to criminal prosecutions are equally applicable where the employer who has committed violations seeks excuse from civil restraint.

It was stated by the trial court in its opinion that "the law probably was never intended to apply to manufacturing establishments conducted as this one", and we must express our disagreement. Although a plant like the Kansas City plant, employing some 450 persons, is large and important, its personnel is not to be thought of as a confused mass of people among whom a stray or two may be unnoted. In such a successful institution the details of the operations are studied and planned and the capacities of each and every individual are considered and adapted and coordinated to the production. Every person is identified and his or her duties are defined and the cooperation necessary to success results from close and constant supervision. The law is directly applicable to such an establishment.

The Act under which this suit was brought has been in effect since 1938, and employers of labor on a large scale must be held to have knowledge of its provisions and of the administrative powers which it confers upon the Children's Bureau. It is

---

[2] Conclusion 2. "That the violations of the child labor law enumerated and established by the proof did not disclose conduct affecting seriously and injuriously the public interest as contemplated by the Congress; that such employment was unauthorized, casual, but for short periods of time, was without advantage or special profit to the defendant, and wholly at variance with its declared policy; and that in the exercise of a sound discretion an injunction should not be granted."

[3] No trifling matters are involved here. The unlawful employments were not short or casual, but in instances extended over weeks and months. Two of the children were employed in hazardous occupations as helpers on trucks, and in moving (with the aid of mechanical jacks) barrels of condensed milk weighing from 400 to 600 pounds and sacks of flour and sugar weighing about 100 pounds each; nearly all were employed for more than eight hours a day, some worked from ten to fourteen hours, and nearly all worked nights.

[4] In this case the existence of shortage of adult labor on account of the war efforts was proved, and there was an especial advantage and profit from the employment of the children to the extent that it occurred.

too late, and it was too late at the time of the trial of this case, for the large employer corporation to escape the restraint contemplated by the Act on the ground that its hiring agents did not know it to be unlawful to employ children under sixteen years of age without bureau certificates.

 It is unnecessary to review in detail the circumstances of the violations occurring at the Kansas City plant as shown by the evidence and found by the court in this case. It suffices that the employing by the foremen was done, sometimes in inexcusable ignorance of the law, and always with justified confidence of immunity so far as the company was concerned. The proof made constituted "cause shown * * * to restrain violations of section 15" within the meaning of section 17 of the Act in the absence of satisfactory evidence that there had been such change in conditions, personnel or method of employing and keeping a check on operations as to assure discontinuance of the violations in the Kansas City plant. The trial court stated in its findings that "the responsible officials of the company are sincerely endeavoring to operate in compliance with the letter of the law as well as its spirit", but the record clearly shows that not one of the company's higher officers or home office officials attempted to explain the failure to take adequate measures during the years the Act had been in effect, nor did any one of them testify to any new or additional measures which would be taken to prevent violations in the future.

It was contended for the Bureau that injunction should have issued generally against the company in respect to all its plants throughout the country, but the testimony was directed particularly to the violations at the Kansas City plant, and the record does not establish that the Act was being violated throughout the system of bakery plants operated by the company. We hold, therefore, that to the extent that the court refused to restrain the company from violations at its plants other than the plant at Kansas City, the judgment should be sustained, but on the clear proof of the continued and repeated violations at the Kansas City plant and the absence of proof of changes in operation to assure against their continuance, the court's refusal of aid to the Bureau required by the Act cannot be sustained. In the situation presented, the dismissal of the action for the reasons declared was tantamount to judicial expression of acquiescence in and toleration of the unlawful conduct, and no such discretion is vested in the court.

The judgment is affirmed to the extent that it denies injunction against violations at the company's plants other than its Kansas City plant. To the extent that the judgment denies restraint of violations at the Kansas City plant and dismisses the action, it is reversed with directions to grant restraint against violations of section 15 at that plant.