**UNITED STATES v. KUNIN et al.**

Civil Action No. 1355.

District Court, D. Connecticut.

March 8, 1945.

Thomas J. Birmingham, Asst. U. S. Atty., and Robert P. Butler, U. S. Atty., both of Hartford, Conn., for plaintiff.

Joseph P. Cooney, of Hartford, Conn., for defendants.

SMITH, District Judge.

This case is before the Court on the application of the War Production Board for a temporary injunction prohibiting the continuance of construction upon premises leased by the defendants, in Bridgeport, Connecticut.

The defendants, holding two adjacent buildings on long-term leases, determined to utilize a store in one of the buildings upon its vacation by a former tenant, to increase the space in a store in the adjoining building owned and operated by the defendants. In order to accomplish this, two things were thought necessary or desirable: (1) Reconstruction of the store front to close the entrance used by the former tenant and replace it with show windows; and (2) the piercing of the party wall between the two buildings to provide communication between the store already operated by the defendants and the store in the adjacent building.

The defendants were advised by a competent architect that the two buildings, in separate ownership, were separate units in the meaning of Conservation Order L–41, so that the reconstruction of the store front and the reconstruction of the party wall to create the openings could be considered as separate jobs on separate units and required no permission from the War Production Board if neither job individually involved an estimated expenditure of more than $200. The defendants thereupon obtained bids on the work of less than $200 on each portion of it, and commenced the reconstruction. The War Production Board warned them that they might be in violation of the Order, advised them to stop construction pending further investigation, and suggested that an application for approval of the reconstruction of the store front and of the party wall be made as one job, which was done.

Some five or six days later, however, the defendants, not having heard from the application, continued with the work until at least two days following receipt of notice of the denial of the application and the sending of a letter by the defendants appealing from the decision denying the application.

The principal question in the case is the interpretation of Conservation Order L–41 to determine whether the reconstruction of the store front and the reconstruction of the party wall are to be considered a job upon one or more stores or one or more units. A unit includes any group of buildings near to each other which serve the same general purpose or closely related purposes, and so, here, the two buildings, while used by the defendants as parts of one store, or at least those portions of the buildings so used, must be considered as one unit even though different portions of the unit are under separate ownership. Prior thereto, there were four stores, including the store at No. 1160 Main Street and the Wilson shoe store, whether considered as parts of one or two units. Within any unit, the cost limit for all jobs begun in the same year is $200 for any store or other retail service establishment, and, if the unit contains more than five such establishments, the limit is $1,000 for the entire unit. The question here is, therefore, whether, on February 1, 1945, when the Wilson shoe store lease had expired and the defendants moved in to occupy the former Wilson shoe store, the store originally occupied by the defendants at No. 1160 Main Street, and the adjacent store formerly occupied by Wilson's remained two separate stores under Conservation Order L–41, Part 1075, Section 1075.1, paragraph (c) (4), or became the same store. It seems most logical to treat the job in this case as the defendants actually treated it, that is, as a unified plan to put the formerly separate premises in shape to be used together as a department store. Once that plan was adopted, there were no longer two stores or retail service establishments but one, and the construction was for the purpose of making the premises function more efficiently as one store than they could in their original condition.

Certainly, however, the regulation is not so clear that the defendants' interpretation of it is any evidence of any intent to violate the Order at the inception of the job. The defendants started the re-

construction in good faith without authorization from the War Production Board, believing it unnecessary under the Order. Under the Court's interpretation, such authorization is necessary and the construction cannot legally be completed without it.

Determination of the effect on the war effort of the use of materials and labor should be left to the administrative agency charged with that task under the law. The defendants' action in going ahead with the job after the question of its legality had been raised by the War Production Board indicates that there is a possibility that the defendants might take a chance on further proceedings and do the small amount of work necessary to complete the job unless restrained. Since such defiance of the Board might, if successful, have a serious effect on the Board's administration of the conservation program in other cases, the plaintiff is entitled to injunctive relief. The Court will, therefore, require the defendants to refrain from further work without authorization.

In view of the apparent difficulty of even the Board itself in interpretation of the regulations as applied to the peculiar state of facts in this case, the good faith of the defendants in entering upon the reconstruction originally, the nature and amount of materials needed to complete the job (stated to be almost entirely some second-hand plate glass already agreed upon to be exchanged for the glass removed) and the relatively serious loss already suffered by the defendants, application to the War Production Board for authorization to complete the job might well be renewed, or appeal from the original ruling pressed. For the Court to deny the injunction and permit the completion of the job without the Board's authorization, however, would be acquiescence in, and toleration of, unlawful conduct, outside the limits of the Court's discretion. Lenroot v. Interstate Bakeries Corporation, 8 Cir., 1945, 146 F.2d 325.

A temporary injunction may be granted, restraining the defendants, in the absence of authorization from the War Production Board, from continuing the alteration or reconstruction of the premises at No. 1160 or No. 1156 Main Street in Bridgeport, Connecticut, or both, pending final determination of this action or further order of this Court.