## WALLING v. ARMSTRONG CO.

### Civ. A. No. 4530.

District Court, D. Massachusetts.

Nov. 20, 1946.

William L. Tyson, Acting Sol., and Jeter S. Ray, Asst. Sol., both of Washington, D. C., and George H. Foley, Reg. Atty., and

Harry A. Tuell, Senior Atty., both of Boston, Mass., for plaintiff.

George A. McLaughlin, of Boston, Mass., for defendant.

FORD, District Judge.

This is a suit brought under Section 17 of the Fair Labor Standards Act of 1938, c. 676, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq., hereinafter called the Act, to enjoin the defendant, a Massachusetts corporation, from violating Sections 15(a) (1) and 15 (a) (2) of the Act.

The material facts, as stipulated and adopted by the court as its findings of fact, are as follows:

The defendant maintained in 1944 and 1945 and at present maintains in the Boston and Maine Railroad Station, in the City of Boston, several retail stands equipped with cash registers from which sales are made to the public of sandwiches, coffee, milk and other food products, together with periodicals, books, candy and smoking supplies.

The company maintains a large warehouse located at 53 Beverly Street, in Boston, distant one business block from the North Station, which supplies warehousing facilities and services for all parts of the business.

It also maintains a train service department in the station. The employees of that department are furnished daily with sandwiches, tonics and other related items which they sell on commission on trains leaving the North Station and bound for destinations in Massachusetts, Maine, New Hampshire, and Vermont. Sales on trains may be made at any point along the route.

Stands and lunch counters similiar to those in the concourse of the North Station are also operated by the company in railroad stations at several points in Massachusetts, Maine, New Hampshire, and Vermont.

The Armstrong Company also maintains a commissary in the North Station. It is located within the North Station in the same building as the retail stands, and all are located under the same roof. There is communication between this commissary and the station concourse by means of an arcade. The arcade is owned by the Boston and Maine Railroad and used as a sidewalk by the general public walking on Causeway Street under license from the Boston and Maine Railroad. The arcade consists of an area over which part of the railroad building is built. The door of the commissary is located 15 feet 4 inches from the door to the North Station proper. There is no sidewalk on the westerly side of Causeway Street except the sidewalk located on Boston and Maine Railroad property and in the arcade. The Armstrong Company pays no rent for that part of the premises occupied by it as a commissary. This space is furnished rent free by the Boston and Maine Railroad.

The Commissary serves as both kitchen and storeroom for the company's several stands in the North Station concourse, for its stands in Maine, New Hampshire, and Vermont, and for the train service department due to the lack of space for these facilities on the concourse. The commissary supplies the following services:

It regularly transfers at cost as often as occasion requires to the Armstrong Company's stands in the North Station and train service department sandwiches, milk tonic, etc. Transfers from the commissary to retail stands outside the state are made on the same basis. It makes no sales. Its transfers are carried as bookkeeping items. It keeps no books other than daily records which are forwarded to the central bookkeeping office of the company, also located in the North Station. It makes no profit, and the cost of its services is charged to the various stands drawing on its services in proportion to the dollar volume of their drawings. The commissary, the train service department, the stands in the North Station, and the stands outside of Massachusetts are all under one unified management.

The Armstrong Company employs in its North Station commissary from 9 to 11 employees in addition to a departmental day manager and a night manager at any one time, all of whom work interchangeably on the various types of duties performed there. These employees prepare

sandwiches by taking two pieces of bread which are already sliced and placing between them the particular articles of food which are customarily used in the type of sandwich being made. It provides the sandwiches with proper wrapping in the form of waxed paper; and the sandwiches are then ready for transfer to the retail stands in the North Station, the retail stands outside of the North Station, and the train service department. Other items of food, such as, milk, cold drinks, and pastry, are transferred by the commissary in the same form and package in which the commissary receives them. Sandwiches made by employees of the commissary comprise by far the greater part of all products which it supplies.

The physical transfer of food to the train service department takes place in the North Station.

Approximately 4% of the total volume of North Station commissary business for any given period is transferred to stands outside Massachusetts for sale, and about 20% is transferred to its train service department for sale by its employees on interstate trains.

Employees in the commissary normally work a 48-hour week and do not receive time and a half of their regular rate of pay for hours over 40.

The defendant in its answer relies on the following defenses: (1) that its employees in its commissary department were not engaged during the period complained of in the production of goods for interstate commerce and (2) that the commissary employees are exempt from the provisions of the Act under Section 13(a) (2) of the same.

■ At the hearing on the merits and in its brief, the defendant did not press the defense that the employees working in the commissary are outside the general coverage of the Act. It seems clear from the definition of "goods" and "produced" in Sections 3(i) and 3(j) of the Act and the cases of Western Union Telegraph Co. v. Lenroot, 323 U.S. 490, 502, 65 S.Ct. 335, 89 L.Ed. 414, United States v. Darby, 312 U.S. 100, 117, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430, and Lenroot v. Interstate Bakeries Corp., 8 Cir., 146 F.2d 325, that the defendant's employees in the commissary department are engaged in the production of goods for commerce and consequently within the general coverage of the Act.

■ The second point relied on by the defendant is more difficult. Section 13(a) (2) exempts "any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce". Since the Act is remedial legislation, this exemption must be narrowly construed (A. H. Phillips, Inc. v. Walling, 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095, 157 A.L.R. 876) and the burden is upon the defendant to prove the employees concerned are swept within it.

It is the contention of the administrator that the defendant's commissary at the North Station is a distinct and separate establishment which does not possess the characteristics of a retail or service establishment within the meaning of Section 13(a) (2) of the Act, while the defendant contends the several stands in the station and the commissary constitute a single retail establishment.

■ An entire business or enterprise may comprise several establishments within the meaning of the exemption. In the case of A. H. Phillips, Inc. v. Walling, supra, 324 U.S. at page 496, 65 S.Ct. at page 810, the word "establishment" is defined as meaning "a distinct physical place of business". The administrator has interpreted "establishment" as meaning "a physical place of business" in Interpretative Bulletin No. 6, pars. 33–37.

■ The defendant's commissary is physically separated from the lunch counters in the North Station, and, as plaintiff argues, the fact that the commissary is located under the same roof as defendant's train service department and several of the stands in the North Station concourse, does not make it functionally any the less a separate and distinct unit than would be the case if it were several doors further away on Causeway Street and under an entirely separate roof. None of the other physical characteristics of the location of the commissary and the stands belies the

fact that the commissary is a place of business physically distinct from the stands in the concourse. Cf. Walling v. Goldblatt Bros., Inc., 7 Cir., 152 F.2d 475. The fact that the regular volume of the interstate business was small does not preclude the application of the Act. Mabee v. White Plains Publishing Co., 327 U.S. 178, 181, 66 S.Ct. 511.

This conclusion brings us to the final consideration. Are the functions of the commissary such as to bring it within the exemption? Plainly not. The commissary, a central producing and distributing point, does not make any retail sales. In fact the public has no access to it and it does not deal with the consuming public in any way. It has none of the characteristics of a retail establishment and is not a retail or service establishment within the meaning of Section 13(a) (2).

It is true the Phillips case may be distinguished from the present case on its facts, but the principles and policy declared there control the present case. In the Phillips case Section 13(a) (2) was held to be inapplicable because the employees involved—warehouse and central office employees of a retail store system—were performing wholesale functions and therefore the establishment in which they were engaged was a wholesale, not a retail establishment. It may also be true, as defendant argues, that the employees in question here may not be employed in a chain store system and may not be performing wholesale functions. But the issue under discussion, as framed by the exemption, is not whether the employees are engaged in a wholesale establishment. The issue is whether they are engaged in a retail or service establishment and the burden is upon the defendant to show that they are so engaged. That it has not done. Also, there is no merit in defendant's contention in its brief that the commissary employees are employed in a local retailing capacity within the meaning of Section 13(a) (1).

### Conclusions.

The employees in the defendant's North Station commissary are engaged in the production of goods for interstate commerce and are within the general coverage of the Act. Also, they are not exempt within the meaning of Section 13(a) (1) or 13(a) (2) of the Act.

The injunction as prayed for in the complaint will issue.