Peter J. BRENNAN, Secretary of Labor, United States Department of Labor, Appellant,

v.

Ricardo CORREA, Jr., d/b/a Ricardo's Mexican Enterprises of Omaha and Ricardo's Casa De Tacos No. 4, Inc., a corporation, Appellees.

No. 74–1620

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 13, 1975.

Decided April 7, 1975.

Bobbye D. Spears, Deputy Associate Sol., Kansas City, Mo., for appellant.

Martin A. Cannon, Omaha, Neb., for appellees.

Before HEANEY and WEBSTER, Circuit Judges, and NANGLE, District Judge.*

PER CURIAM.

The Secretary of Labor appeals from the decision of the District Court [1] refusing to enjoin Ricardo Correa, Jr., from further violating the child labor

---

* JOHN F. NANGLE, District Judge, Eastern District of Missouri, sitting by designation.

1. The United States District Court for the District of Nebraska, Denney, J., filed an unreported memorandum opinion on June 20, 1974.

provisions[2] of the Fair Labor Standards Act of 1938, as amended (the "Act"), 29 U.S.C. § 201 et seq. The secretary brought the action under Section 17 of the Act, 29 U.S.C. § 217.

Although the District Court found that appellee Correa committed violations of the Act, it denied permanent injunctive relief. The issue before us is whether the District Court abused its discretion in denying relief. Concluding that it did and that a permanent injunction should have been issued, we reverse and remand.

Appellee Correa does business as Ricardo's Mexican Enterprises of Omaha, producing corn and flour tortillas and taco shells for retail and wholesale distribution. Appellee's production facility is located in Omaha, Nebraska. Retail distribution of the products is made through four self-service Mexican food restaurants owned by Correa and located in the Omaha area. The products are distributed wholesale to grocery stores and other customers in Iowa and South Dakota. In 1971 appellee's total sales exceeded $250,000.00. It is readily apparent, and appellee does not argue to the contrary, that appellee's business is covered by the Act's provisions. *See* 29 U.S.C. § 203(s).

On June 8, 1970, a Department of Labor wage and hour investigator inspected appellee's production facility. He observed twelve instances of persons being employed in violation of the age provisions of the Act. One employee, James Koll, then fifteen years of age, was observed cleaning a dough-mixing machine in violation of Hazardous Order No. 11,[3] promulgated by the Secretary. The investigator discussed the violations with Correa and his attorney. Correa explained that he had been unaware that his business was covered by the Act. Later in June the investigator returned to wind up his inspection and observed that Brian Maher, previously observed as employed in violation of the Act, remained so employed by appellee.

In July, 1970, the investigator again discussed these violations with Correa and his attorney. They gave assurances that Correa would comply with the Act's requirements in the future. The Department of Labor Area Director carefully explained to Correa the Act's requirements in a letter dated August 10, 1970.

In December, 1970, Correa instituted an unwritten policy of not employing anyone under sixteen years of age in the retail operation or under eighteen years of age in the wholesale operation which included production.

The Department of Labor investigated Correa's production facility again in April, 1971. The investigating Compliance Officer found one child labor violation, and explained that the flour dough mixer was covered by Hazardous Order No. 11. After conferring with Correa, the Compliance Officer was persuaded

---

**2.** 29 U.S.C. § 212(c) provides:

No employer shall employ any oppressive child labor in commerce or in the production of goods for commerce or in any enterprise engaged in commerce or in the production of goods for commerce.

29 U.S.C. § 215(a)(4) provides:

(a) After the expiration of one hundred and twenty days from June 25, 1938, it shall be unlawful for any person * * * (4) to violate any of the provisions of section 212 of this title.

29 U.S.C. § 203(*l*) provides in pertinent part:

"Oppressive child labor" means a condition of employment under which (1) any employee under the age of sixteen years is employed by an employer * * * in any occupation, or (2) any employee between the ages of sixteen and eighteen years is em-

ployed by an employer in any occupation which the Secretary of Labor shall find and by order declare to be particularly hazardous for the employment of children between such ages or detrimental to their health or wellbeing * * *.

**3.** Hazardous Order No. 11 is found at 29 C.F.R. § 570.62 and provides in pertinent part:

(a) *Finding and declaration of fact.* The following occupations involved in the operation of power-driven bakery machines are particularly hazardous for the employment of minors between sixteen and eighteen years of age:

(1) The occupations of operating, assisting to operate, or setting up, adjusting, repairing, oiling, or cleaning any horizontal or vertical dough mixer * * *.

that he was making a good faith effort to comply with the Act.

On November 6, 1972, Tom Carl, then seventeen years of age, became entangled in the masa feeder, a power-driven production machine, and was killed. A subsequent investigation indicated that he had been employed in violation of Hazardous Order No. 11, and that two other persons were employed in violation of the Child Labor Regulation No. 3, 29 C.F.R. § 570.31 et seq. Again appellee promised future compliance with the Act. However, the trial court found that from November, 1972, to February, 1973, appellee employed a person under eighteen years of age in violation of the Hazardous Order No. 11. On March 28, 1973, the Secretary commenced this action.

▄▄▄ An important tool[4] available to the Secretary for compelling compliance with the Act is an action for injunctive relief under § 17. Such relief is remedial in nature, i.e., intended to prevent future violations; it is not imposed as punishment for past violations. Goldberg v. Kickapoo Prairie Broadcasting Co., 288 F.2d 778, 783 (8th Cir. 1961); Mitchell v. Southwest Engineering Company, 271 F.2d 427, 432 (8th Cir. 1959); Wirtz v. Lone Star Steel Company, 405 F.2d 668, 670 (5th Cir. 1968). The trial court, in determining whether or not to enjoin an employer from further violations must exercise its discretion to accomplish the Act's objective of abolishing oppressive child labor. Lenroot v. Interstate Bakeries Corporation, 146 F.2d 325, 327 (8th Cir. 1945); Mitchell, supra. Guiding factors include the employer's previous noncompliance and the dependability of its promise of future compliance. Shultz v. Salinas, 416 F.2d 412, 414 (5th Cir. 1969); Hodgson v. Griffin and Brand of McAllen, Inc., 471 F.2d 235, 238 (5th Cir. 1973), cert. denied, 414 U.S. 819, 94 S.Ct. 43, 38 L.Ed.2d 51 (1973). The trial court's belief that the employer desires to comply with the Act in the future might not be sufficient reason to deny the injunction. Lenroot v. Kemp, 153 F.2d 153, 156 (5th Cir. 1946).

The trial court denied relief finding that Correa "took prompt action in an attempt to comply with the provisions of the Act." The trial court further found as follows:

The Court does not consider this case to be one in which the employer is making pious declarations of attempted compliance, while taking no action to constructively institute policies which would insure compliance. Here, the employer hired additional help to prepare and maintain records required by the Act and instituted policies designed to assure compliance with the Act. (App. 358.)

The record indicates that Correa discharged employees shown by the investigators to be employed in violation of the Act and advised his supervisors orally not to hire persons younger than the Act's age requirements. After the April, 1971, inspection, Correa advised his supervisors not to allow anyone under eighteen years of age to operate the flour dough mixer. Nevertheless, violations continued to occur.

Correa testified that after the first inspection he made no effort to learn the provisions of Hazardous Order No. 11. Although he could observe the entire production line through a window in his office, and although he was aware that James Koll had been rehired, he was unaware that Koll was employed cleaning and filling the dough mixer in violation of Hazardous Order No. 11.

▄▄▄ This Court has long held that an employer's duty to enforce the provisions of the Act does not end with directives communicated to subordinates. Lenroot v. Interstate Bakeries Corporation, supra, 146 F.2d at 328. Where such directives are followed by further violations, sterner measures controlling the actions of subordinates may be appropri-

---

4. Other available tools are administrative persuasion and an action under § 16 of the Act, 29 U.S.C. § 216(c), to recover unpaid minimum wages or overtime compensation owing to an employee.

ate. *Id.* at 327. The record indicates that Correa instituted no measures sterner than oral directives against his two primary supervisors. This Court concludes that the record provides an insufficient factual basis for a reasonable belief that violations of the Act will cease. The trial court's dismissal of the Secretary's complaint was an abuse of discretion.

The judgment of the District Court is reversed with directions to enjoin appellee Correa permanently from further violating Section 15(a)(4) of the Act, at the appellee's production facility, as prayed for by the Secretary in his complaint.