William E. BROCK, Secretary of
Labor, United States Department
of Labor, Plaintiff,

v.

VAFLA CORPORATION and Wayne H.
Saunders, Defendants.

No. 84–112–Civ-Oc–12.

United States District Court,
M.D. Florida,
Ocala Division.

April 10, 1987.

David E. Jones, Office of the Solicitor, U.S. Dept. of Labor, Atlanta, Ga., for plaintiff.

Charles D. Fox, III, Richard E.B. Foster, Roanoke, Va., J. Richard Moore, Gary B. Tullis, Jacksonville, Fla., for defendants.

## OPINION AND ORDER

MELTON, District Judge.

This cause came on to be heard by the Court sitting without a jury on the 19th day of September, 1986. This is an action brought by the Secretary of Labor under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq.* [hereinafter "Act"], against VAFLA Corporation and Wayne H. Saunders, seeking prospective and restitutionary injunctive relief against defendants, pursuant to § 17 of the Act, 29 U.S.C. § 217, for alleged violations of the minimum wage and overtime provisions of the Act, together with an award of liquidated damages, pursuant to § 16(c) of the Act, 29 U.S.C. § 216(c), equal to the amount of back wages found to be due. The Court has duly considered the testimony and exhibits presented at trial, the stipulations of the parties and the balance of the record herein and makes the following findings and conclusions:

## FINDINGS OF FACT

1. Throughout each year during the period from May 7, 1981 through December 31, 1983 [hereinafter "applicable period"], defendants VAFLA Corporation and Wayne H. Saunders were engaged in the operation of an amusement park known as "Six Gun Territory" in Marion County, Florida.

2. During the applicable period, Samuel Lionberger, Jr. was president and a director of the corporate defendant. During the same period, Charles D. Fox, III and Terrence Henson were directors of the corporation and its secretary and treasurer, respectively.

3. It is admitted that, during the applicable period, defendant Wayne H. Saunders was the general manager of Six Gun Territory. Furthermore, from the uncontroverted testimony of Mr. Saunders, it is clear that his duties were to oversee the operation of the amusement park on a day to day basis there at the site. He determined the number and duties of employees, hired and fired employees and set the wage rates of new employees. He occupied an office at the park site wherein payroll records and records of hours worked were maintained and where the payroll checks were prepared and handed out to employees. Mr. Saunders discussed the operation of the park by telephone on a weekly basis with Messrs. Henson, Fox and Lionberger, discussing personnel matters mostly with Henson and then Fox. It is clear that defendant Wayne H. Saunders acted directly and indirectly in the interest of defendant VAFLA Corporation in relation to its employees.

4. Defendants admit that, in the operation of Six Gun Territory during the applicable period, they were engaged in related activities performed either through unified operation or common control for a common business purpose. They also admit that they employed persons who were engaged in commerce or in handling, selling or oth-

erwise working on goods or materials that had been produced at or shipped from points outside the State of Florida. Moreover, defendants admitted having annual gross volumes of sales made or business done of not less than $325,000 through December 31, 1981 and $362,500 from January 1, 1982 (exclusive of excise taxes at the retail level which are separately stated).

5. During the year 1980, defendants' monthly receipts admittedly were as follows:

| | |
|---|---|
| January 1980 | $36,023.19 |
| February 1980 | 43,583.72 |
| March 1980 | 60,559.71 |
| April 1980 | 74,981.66 |
| May 1980 | 62,037.22 |
| June 1980 | 99,193.49 |
| July 1980 | 156,045.01 |
| August 1980 | 141,368.67 |
| September 1980 | 48,157.25 |
| October 1980 | 37,894.86 |
| November 1980 | 37,309.04 |
| December 1980 | 41,403.48 |

6. During the year 1981, defendants' monthly receipts admittedly were as follows:

| | |
|---|---|
| January 1981 | 34,766.64 |
| February 1981 | 40,629.64 |
| March 1981 | 64,848.60 |
| April 1981 | 77,626.48 |
| May 1981 | 81,656.53 |
| June 1981 | 108,904.50 |
| July 1981 | 165,602.50 |
| August 1981 | 146,574.39 |
| September 1981 | 54,422.42 |
| October 1981 | 60,478.63 |
| November 1981 | 38,717.43 |
| December 1981 | 35,414.75 |

7. During the year 1982, defendants' monthly receipts admittedly were as follows:

| | |
|---|---|
| January 1982 | $33,756.36 |
| February 1982 | 44,912.55 |
| March 1982 | 58,217.33 |
| April 1982 | 66,498.10 |
| May 1982 | 65,754.51 |
| June 1982 | 100,559.87 |
| July 1982 | 168,903.35 |
| August 1982 | 137,162.09 |
| September 1982 | 51,195.71 |
| October 1982 | 56,732.34 |
| November 1982 | 32,326.87 |
| December 1982 | 37,680.93 |

8. During 1980, 1981 and 1982, defendants' average receipts for any six months of any such year were always greater than $33\frac{1}{3}\%$ of its average receipts for the other six months of the given year.

9. At all times relevant hereto, defendant Wayne H. Saunders had a general awareness of the requirements of the Act and understood the minimum wage, overtime and recordkeeping provisions thereof. He erroneously believed, however, that Six Gun Territory was exempt, as an amusement park pursuant to § 13(a)(3) of the Act, 29 U.S.C. § 213(a)(3), from paying the statutory minimum wage and overtime rates to its employees. His belief that Six Gun was exempt stemmed in part from the fact that when he assumed the position of general manager, the park's hourly-paid employees were not being compensated in compliance with the minimum wage and overtime requirements.

At all times during the applicable period, VAFLA's secretary and director, Charles D. Fox, III, was a practicing attorney and named partner in the Roanoke, Virginia, law firm that was VAFLA's general counsel, and he is one of its attorneys of record herein. During the same period, VAFLA's treasurer and director, Terrence Henson, was a certified public accountant, a member of an accounting firm in Winston-Salem, North Carolina, and prepared VAFLA's W-2 forms.

In view of the level of business sophistication of the aforesaid officers and directors of the corporate defendant, and notwithstanding defendant Saunders' erroneous belief that Six Gun was exempt from paying the statutory minimum wage and overtime rates to its employees, it is clear that the defendants at all times relevant hereto knew of the Act and that it was at least in the picture in relation to their employment practices.

10. The defendants' hourly-paid employees received their paychecks on a weekly basis. They punched a time clock to pro-

duce admittedly accurate records of their hours worked which defendants' office personnel transcribed onto individual compensation records maintained on each such employee. Those compensation records [Plaintiff's Exhibit Number 1], each sheet of which contains lines of entries for each week in which the named employee worked, also admittedly accurately reflect, *inter alia,* the employees' gross pay, payroll deductions and net pay.

A compliance officer of the Department of Labor's Wage and Hour Division, James P. Breidenstein, reviewed defendants' individual compensation records during his investigation of their operation. Mr. Breidenstein, a top flight compliance officer who has in the past been selected to participate on special details in his agency's regional and national offices, reconstructed the hourly rates of pay of the affected employees by dividing gross pay by hours worked for each workweek. The hourly rates of pay so computed were fairly consistently found to be below the statutory minimum wage rate of $3.35 per hour. Moreover, in weeks wherein the hourly employees worked in excess of 40 hours, their gross pay was found to be the product of their hours worked times their hourly or regular rates of pay. Accordingly, it is clear that defendants failed to compensate their hourly-paid employees for overtime hours worked at the statutory rate of time and one-half their regular rates of pay, or time and one-half the minimum wage rate when such was greater than an employee's regular rate of pay.

Mr. Breidenstein made entries on Wage Transcription and Computation Sheets for each affected employee, transcribing the hours worked and gross pay for each relevant work week from defendants' individual compensation records, reconstructing the hourly rates of pay and computing the amounts due for the minimum wage and overtime deficiencies [Plaintiff's Exhibit Number 2]. He further prepared a Summary of Unpaid Wages, setting forth the names and addresses of all such employees found to be due back wages, along with the periods for which such back wages were computed and the amounts of the back wages [Plaintiff's Exhibit Number 3]. For the applicable period, 186 of defendants' employees were computed to be due a total of $34,352.51 in back wages. Of that amount, $28,496.39 constitute minimum wages due 170 employees, while $5,856.12 constitute overtime compensation due 68 employees.

At trial, the defendants stipulated that they had failed to pay the statutory minimum wage and overtime rates to their employees and further stipulated to the accuracy of Mr. Breidenstein's calculations. The Court having reviewed the matter, Mr. Breidenstein's methods and conclusions as set out hereinabove are hereby adopted.

11. The record contains no evidence that prior to the Wage and Hour investigation in March of 1982, the defendants analyzed the previous year's monthly receipts to determine the possible applicability of the § 13(a)(3) exemption for any succeeding year. During the investigation, Mr. Breidenstein analyzed the monthly receipts, determined that the exemption did not apply during the period in question and so advised defendant Wayne H. Saunders. Mr. Saunders then independently analyzed the monthly receipts, disagreed with Mr. Breidenstein's conclusions and conferred on the matter with Mr. Fox, the corporate attorney, officer and director. Defendants' position remained that they were exempt from complying with the wage requirements of the Act. At the investigation closing conference conducted by Mr. Breidenstein, Mr. Saunders refused to promise that defendants would in the future comply with the requirements of the Act, stating that any change in policy would have to come from the Board of Directors of the corporate defendant. From March of 1982 through December of 1983, with full knowledge of the Wage and Hour Division's investigative conclusions, the defendants continued to pay subminimum hourly rates to their employees and straight time rates for overtime hours worked.

12. In January of 1984, the defendants ceased operating Six Gun Territory in Marion County, Florida. Mr. Saunders was appointed director of operations of Lake-

side Amusement Park, located in Salem, Virginia, and owned by Mountain Park, Inc., a Virginia corporation of which Messrs. Fox and Henson are officers and directors. Mr. Saunders testified at trial that Lakeside Amusement Park is run in compliance with the provisions of the Act.

13. In open court, just prior to the commencement of the trial in this case, counsel for both defendants asserted that their respective clients had no funds with which to pay the back wages, if any, found to be due. Counsel for defendant VAFLA Corporation further asserted that it had been dissolved in 1984 and was no longer in business. None of these assertions are of record herein, however, as defendants offered no evidence in support thereof.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter and parties to this action.

2. During the applicable period, defendants were an enterprise engaged in commerce or in the production of goods for commerce within the meaning of §§ 3(r) and (s) of the Act, 29 U.S.C. § 203(r) and (s).

3. It is clear from several of the foregoing findings of fact, and defendants have admitted, that at no time during the applicable period did the § 13(a)(3) exemption apply to Six Gun Territory.

■ 4. The minimum wage and overtime compensation requirements of the Act are imposed upon "employer[s]". 29 U.S.C. § 206, 207. Section 3(d) of the Act defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Courts consistently have held that "[t]he term 'employer' is not limited to the narrow or technical concepts of employment but rather is given a broad meaning to carry out the purpose of the Act." See *Donovan v. American Leader Newspapers, Inc.*, 524 F.Supp. 1144, 1146 (M.D.Fla.1981). "[T]he parameters of § 203(d) are sufficiently broad to encompass an individual who ... acts, or has the power to act, on behalf of the corporation

vis-a-vis its employees." *Donovan v. Sabine Irrigation, Inc.*, 695 F.2d 190, 194–95 (5th Cir.1983), *cert. denied*, 463 U.S. 1207, 103 S.Ct. 3537, 77 L.Ed.2d 1387 (1983). Given these standards and the duties of defendant Saunders as the general manager of Six Gun Territory, the Court hereby deems him to have been an employer within the meaning of § 3(d) during the applicable period.

■ 5. Under the governing Portal-to-Portal Act, a finding of "willful" violation subjects an employer to a three year, rather than two year, statute of limitations for back wage liability. 29 U.S.C. § 255. The standard for willfulness is whether the employer was aware that the Fair Labor Standards Act was applicable to his employment practices. *Donovan v. Bel-Loc Diner, Inc.*, 780 F.2d 1113, 1117 (4th Cir. 1985); *Brock v. Georgia Southwestern College*, 765 F.2d 1026, 1039 (11th Cir. 1985); *Brennan v. General Motors Acceptance Corp.*, 482 F.2d 825, 828 (5th Cir. 1973); *Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139, 1142 (5th Cir.1972). Moreover, it is unnecessary to establish the actual awareness of the law to show willfulness, because knowledge is imputed. *Marshall v. A.M. Consolidated School District*, 605 F.2d 186, 190–91 (5th Cir.1979).

■ Prior to the Wage and Hour investigation leading to this lawsuit, defendant Saunders had a general awareness of the requirements of the Act, understood its major provisions and believed that the amusement park was exempt largely because when he became general manager, the wage system in place did not compensate hourly employees at the statutory minimum wage and overtime rates. At least two of the officers and directors of the corporate defendant were trained and practicing professionals whom the Court deems to have comprehended the possible applicability of the Act. Yet, prior to the investigation, the defendants apparently took no definitive steps to ascertain whether the Act applied to their operation of Six Gun Territory. The defendants "... unwillingness to make further inquiries and to determine the exact parameters of [their] statu-

tory obligation afford [them] no protection. An ostrichlike cultivation of ignorance has never been a defense to liability for willful violation of the Act. See *Mitchell v. Hausman,* 5 Cir.1958, 261 F.2d 778, 780." *Brennan v. Heard,* 491 F.2d 1, 3 (5th Cir. 1974).

During the investigation, defendant Saunders finally took a look at the relevant figures of monthly receipts and erroneously concluded that Six Gun was exempt from complying with the Act's wage requirements. One would think that at least Mr. Henson, a C.P.A., would have been able to correct any mathematical errors made by Mr. Saunders. Regardless thereof,

> ... neither a good faith belief in the lawfulness of his wage and overtime [practices] nor complete ignorance of their invalidity shields the employer from the additional year of liability. Such nescience and naivete are not determinative on the question of willfulness under this Act. An employer acts willfully and subjects himself to the three year liability provision if he knows, or has reason to know that his conduct is governed by the Fair Labor Standards Act.

*Id.* 491 F.2d at 3.

Thus, the defendants acted willfully and the operation of the applicable statute of limitations entitles plaintiff to recover for back wage liability proven at trial for the period from three years prior to the filing of the Complaint herein, that is, from May 7, 1981 forward.

6. Due to their violations of the minimum wage and overtime provisions of the Act, 29 U.S.C. §§ 206 and 207, the defendants owe 186 of their former employees $34,352.51, of which $28,496.39 constitute minimum wages due 170 persons and $5,856.12 constitute overtime compensation due 68 persons.

7. As the Fifth Circuit has noted, by virtue of its double negative, § 17 of the Act, 29 U.S.C. § 217, ... "provides in effect for an injunction requiring an employer to pay back wages." *Donovan v. Brown Equipment & Service Tools, Inc.,* 666 F.2d 148, 155 (5th Cir.1982). The purpose of such a restitutionary injunction is

two-fold. It exacts the compensation due employees who have not received the wages required to be paid them under the statute and it also corrects "a continuing offense against the public interest." *Marshal v. A & M Consolidated, supra,* 605 F.2d at 189 (quoting *Wirtz v. Jones,* 340 F.2d 901, 904 (5th Cir.1965)).

 Good faith, if any, on the part of an employer is not grounds for the denial of a restitutionary injunction. *Donovan v. Grantham,* 690 F.2d 453, 456–457 (5th Cir. 1982); *Donovan v. Brown Equipment, supra,* 666 F.2d at 156; *Marshall v. A & M Consolidated, supra,* 605 F.2d at 190. Nor is inability to pay a ground for such a denial.

> Defendants' ability or inability to pay such wages is not a defense to the rights of their employees to the wages they have earned or to the other violations of the [Act] committed by them. The financial ability of the defendants would only become pertinent if the restraint which will be placed on them from witholding the minimum wage and overtime compensation that the Court finds is due the different employees, is not complied with.

*Wirtz v. Fortuna Broom Co.,* 53 C.C.H. Lab.Cas. ¶ 31,785, 42,715 (S.D.Texas, 1966), aff'd *per curiam Fortuna Broom Co. v. Wirtz,* 379 F.2d 327 (5th Cir.1967); *Wirtz v. Malthor,* 391 F.2d 1, 3 (9th Cir.1968).

 "In light of the purposes of the Act, an injunction against withholding back pay is virtually indispensable." *Donovan v. Grantham, supra,* 690 F.2d at 457; *Donovan v. Brown Equipment, supra,* 666 F.2d at 156. Accordingly, the restitutionary injunctive relief authorized by § 17 of the Act is hereby invoked to restore the entire amount of back wages found to be due.

 8. Section 16(c) of the Act provides in part that the Secretary of Labor may bring an action to recover unpaid minimum wages, overtime compensation "... and an equal amount as liquidated damages." 29 U.S.C. § 216(c). Section 11 of the Portal-to-Portal Act, which sets forth a defense against the award of liquidated damages,

provides that where an employer "... shows to the satisfaction of the court ..." that his violation "... was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation ...," then the court "... may, in its sound discretion ...," award a lesser amount or no liquidated damages at all. 29 U.S.C. § 260. For this defense to be successfully asserted, "... the delinquent employer must sustain a 'plain and substantial burden of persuading the court ...,'" and absent such compelling proof "... a District Court has no power or discretion to reduce an employer's liability for the equivalent of double unpaid wages." *McClanahan v. Matthews*, 440 F.2d 320, 322 (6th Cir.1971).

Under the applicable two-prong test, good faith is evidenced by "... an honest intention to ascertain what the ... Act requires and to act in accordance with it." *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 464 (D.C.Cir.1977), *cert. denied* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1977); *Barcelona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 469 (5th Cir.1979). This necessitates a "... subjective inquiry." *Northwest Airlines, supra*, 567 F.2d at 464. The record herein amply supports, indeed it compels, the conclusion that prior to the Wage and Hour investigation, the defendants took no meaningful steps to determine the applicability of the § 13(a)(3) exemption and therefore failed to evidence any honest intention to determine whether the Act applied to their operations. During the investigation, however, Mr. Saunders analyzed the monthly receipts in perhaps an honest fashion, albeit mathematically incorrect, discussed the question of wage and hour compliance with Mr. Fox and then continued the past violative practices with a subjective belief that the Act was being complied with. However, the inquiry does not stop here as the defense requires a compelling showing of good faith *and* a reasonable belief in the lawfulness of the defendants' actions.

The second prong of the test, an attempted demonstration of a reasonable belief that the acts or omissions were not violative of the Act, "... imposes an objective standard by which to judge the employer's conduct." *Williams v. Tri-County Growers, Inc.*, 747 F.2d 121, 129 (3rd Cir.1984); *Northwest Airlines, supra*, 567 F.2d at 465. Under this standard, prior to the Wage and Hour investigation, defendants again failed to have a sufficient basis upon which to support an objective, reasonable belief that their operation was exempt from the wage requirements of the Act. Nor is an objective, reasonable belief evidenced by Mr. Saunders having analyzed the monthly receipts during the investigation. The objective facts then and now demonstrate the plain inapplicability of the exemption, to which the defendants have conceded:

> During the applicable period, the minimum wage and overtime provisions of the Act applied to [defendants'] non-exempt employees inasmuch as [defendants] failed to meet the requirements for the exemption set forth at § 13(a)(3) of the Act [29 U.S.C. 213(a)(3)].

Pretrial Stipulation, Agreed Upon Issues of Law, Item B. Given the clear mathematical reality of that result, and the obvious availability of the monthly income figures from the preceding year at the time the defendants should have made their yearly assessment of the applicability of the exemption and their concomitant wage rate determinations, it cannot be concluded that defendants had an objective reasonable belief that their acts of omissions were not violative of the Act.

Thus, the Court hereby awards liquidated damages in an amount equal to the back wages found to be due.

■ 9. Section 17 of the Act grants jurisdiction to federal district courts "to restrain violations" of the Act. 29 U.S.C. § 217. It is well established that where there is a finding of clear violations of the Act, an injunction against the commission of future violations should issue unless the court is firmly convinced that violations will not recur. *Mitchell v. Hausman, supra*, 261 F.2d at 780; *Lenroot v. Kemp*, 153 F.2d 153, 156 (5th Cir.1946); *Brennan v. Correa*, 513 F.2d 161, 163 (8th Cir.1975).

Herein, despite having knowledge of the Act's possible application to their operation of Six Gun Territory, defendants operated that amusement park and paid substandard wages to a substantial number of employees without having taken prudent steps to determine for sure whether the park was exempt from the Act's wage payment requirements. To compound matters, they continued violating the Act for a period of almost two years after having been advised of their failure to comply by the Wage and Hour Division, then closed the park and left the State of Florida. With this background, the Court cannot credit Mr. Saunder's assertion that Lakeside Amusement Park in Salem, Virginia, is currently being operated in compliance with the Act. Clearly, the tendency and opportunity to violate are present.

Assuming, *arguendo*, that defendant VAFLA Corporation had presented evidence to prove that it had dissolved and no longer is in operation, the entry of prospective injunctive relief against it would not be summarily ruled out. Such relief, would run against the corporation, its officers, agents, servants, employees and attorneys, and upon all persons in active concert or participation with them who receive actual notice thereof, in their official capacities as agents of VAFLA Corporation, Rule 65(d), Federal Rules of Civil Procedure, could nevertheless be probative on the issue of willfulness in subsequent actions under the Act in which such agents are involved.

The defendants' "previous noncompliance," *Brennan v. Correa, supra,* 513 F.2d at 163, is particularly important herein inasmuch as one purpose of an injunction is to shift from the Secretary to the employer the responsibility of insuring compliance. As the Fifth Circuit explained in *Goldberg v. Cockrell,* 303 F.2d 811, 814 (5th Cir. 1962):

> The Wage and Hour Division cannot reasonably be charged with the responsibility of checking back on past violators to make sure that they are obeying the laws. Fairness and the economy of administrative effort both dictate that after an employer has once violated the Act he

should bear his own responsibility for the future.

Accordingly, the defendants shall be enjoined for committing future violations of the minimum wage and overtime compensation provisions of the Act.

Based on the foregoing, it is

ORDERED:

That plaintiff shall submit to the Court a proposed judgment consistent with this Opinion within fifteen (15) days of the date hereof.